**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| Derrick Thomas, | Case No. 1:17-CV-411 |
| *On behalf of himself and those similarly situated,* | Judge Michael R. Barrett |
| Plaintiff, | |
| v. | |
| Papa John's International, Inc.; It's Only Downtown Pizza, Inc.; It's Only Pizza, Inc.; It's Only Downtown Pizza II Inc.; It's Only Papa's Pizza LLC; and Michael Hutmier, | |
| Defendants. | |

## PAPA JOHN'S INTERNATIONAL, INC.'S MOTION TO DISMISS, TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF NEW YORK, OR STAY THE CASE

Defendant Papa John's International, Inc. ("PJI" or "Defendant") respectfully moves this Court, pursuant to the "first-to-file" rule and Federal Rule of Civil Procedure 12(b)(3), to dismiss this case for improper venue, transfer it to the Southern District of New York for consolidation with a previously-filed and pending case in that district that seeks relief for an overlapping putative collective action on the same theory, or stay the case until the litigation in the Southern District of New York is resolved. For the reasons stated in the accompanying Defendant's Memorandum in Support of Motion to Dismiss, Transfer the Case to the Southern District of New York, or Stay the Case, the Court should dismiss this case for improper venue, transfer it to the Southern District of New York for consolidation with a previously-filed and pending case in that district that seeks relief for the same putative collective action class on the same theory, or stay the case until the litigation in the Southern District of New York is resolved.

**DATED: September 5, 2017**

Respectfully submitted,

PAPA JOHN'S INTERNATIONAL, INC.

By:/s/ Gerald L. Maatman, Jr.

    *One of The Attorneys for Defendant Papa*
    *John's International, Inc.*

Christina M. Janice
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5224
Facsimile: (312) 460-7279
cjanice@seyfarth.com

Gerald L. Maatman, Jr. (admitted *pro hac vice*)
Gina R. Merrill (*pro hac vice* to be applied for)
Brendan Sweeney (*pro hac vice* to be applied for)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526
gmaatman@seyfarth.com
gmerrill@seyfarth.com
bsweeney@seyfarth.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| Derrick Thomas, | |
| *On behalf of himself and those similarly situated,* | Case No. 1:17-CV-411 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| Papa John's International, Inc.; It's Only Downtown Pizza, Inc.; It's Only Pizza, Inc.; It's Only Downtown Pizza II Inc.; It's Only Papa's Pizza LLC; and Michael Hutmier, | |
| Defendants. | |

**PAPA JOHN'S INTERNATIONAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, TRANSFER THE CASE TO THE SOUTHERN DISTRICT <u>OF NEW YORK, OR STAY THE CASE</u>**

Papa John's International, Inc. ("PJI" or "Defendant")[1] respectfully moves, pursuant to the "first-to-file" rule, to dismiss this case, transfer it to the U.S. District Court for the Southern District of New York for consolidation with a previously-filed and pending case in that district that seeks relief on behalf of a collective action which encompasses the collective action asserted in this case on the same theory, or stay the case until the litigation in the Southern District of New York is completed.[2]  Defendants It's Only Downtown Pizza, Inc.; It's Only Pizza, Inc.; It's Only Downtown Pizza II Inc.; It's Only Papa's Pizza LLC; and Michael Hutmier (the "Franchisee Defendants") consent to this motion and agree that this case should be dismissed, transferred to the U.S. District Court for the Southern District of New York, or alternatively, stayed until that litigation is resolved.[3]

## I.      INTRODUCTION

More than 15 months ago, plaintiffs in *Durling et al. v. Papa John's International, Inc.*, No. 7:16 Civ. 3592 (S.D.N.Y.) ("*Durling*") filed a complaint against PJI purporting to bring a nationwide collective action on behalf of individuals who are employed as delivery drivers in corporate and franchise-owned Papa John's restaurants.  In *Durling*, plaintiffs allege that PJI is directly liable for wage-and-hour violations for its corporate employees, and also liable to employees of franchisees under a novel theory of joint-employer liability and apparent agency. According to the *Durling* plaintiffs, PJI's franchise model is merely a "façade," meant to shield PJI from liability while it maintains franchise-wide policies and procedures that resulted in

---

[1] Papa John's International, Inc. is the contracting party on the franchise agreement with each Papa John's franchisee in the United States.  Papa John's International, Inc. operates corporate stores in a few select markets, but Papa John's USA, Inc. is the main operating entity that operates corporate stores and employs most corporate employees. Most of the employees that support the franchise business are employed by Papa John's USA, Inc. For ease of reference, these entities are collectively referred to herein as "PJI."

[2] On August 4, 2017, counsel for PJI delivered an executed waiver of service form to counsel for Plaintiffs.

[3] Plaintiff filed an executed waiver of service from Defendants It's Only Downtown Pizza, Inc.; It's Only Pizza, Inc.; It's Only Downtown Pizza II Inc.; It's Only Papa's Pizza LLC; and Michael Hutmier on July 21, 2017.  (ECF No. 3.)

delivery drivers being "systematically under-reimbursed for vehicular wear and tear, gas, and other driving-related expenses" in violation of the Fair Labor Standards Act ("FLSA") and the minimum wage laws of New York, Pennsylvania, New Jersey, and Delaware.

In this case, Plaintiff Derrick Thomas ("Plaintiff" or "Thomas") has filed an FLSA lawsuit on behalf of himself and a proposed collective action of delivery drivers, which is encompassed by the proposed collective action in *Durling*.[4] Just as in *Durling*, Plaintiff alleges that PJI "maintained a policy and practice of failing to reimburse delivery drivers for costs and expenses . . . causing Plaintiff's and similarly situated delivery drivers' wages to fall below minimum wage." (Compl. 7)

Most importantly, just as in *Durling*, Plaintiff's theory supporting his purported FLSA collective action is that despite the fact the delivery drivers in the proposed collective action worked for the Franchisee Defendants, rather than for PJI itself, PJI nevertheless should be liable to these delivery drivers as a "joint employer." The court overseeing the *Durling* action has already denied a motion for conditional certification, without prejudice, that was based on the same theory, holding that "the plaintiffs have offered no evidence that [PJI] dictated the payment policy for delivery drivers at all Papa John's restaurants, including franchises." (*See* Maatman Decl. ¶ 5, Ex. 1, Transcript of Proceedings, March 29, 2017 at 24:12-15.)[5] The *Durling* plaintiffs have renewed their motion for conditional certification, which is presently pending for decision. *See* ECF No. 160. The court's ruling on that motion will determine whether that case will

---

[4] The Complaint does not clearly define the proposed collective action. Plaintiff purports to define the "FLSA Collective" as follows: "Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Cincinnati Regional Stores owned, operated and controlled by Defendants nationwide…" *See* ECF No. 1 ¶ 209. Plaintiff also alleges that he: "brings this action on behalf of himself and similarly situated current and former delivery drivers…to remedy violations of the FLSA wage and hour provisions by Defendants." PJI's arguments in this motion apply whether Plaintiff is seeking to bring a nationwide collective action or a collective action limited to delivery drivers "employed at the Cincinnati Regional Stores."

[5] ("Maatman Decl.") refers to the Declaration of Gerald L. Maatman, Jr. filed contemporaneously herewith.

proceed as a nationwide collective action involving thousands of employees who work at stores independently owned and operated by over 700 different independently owned franchisees, including the individuals included in the collective action proposed by Plaintiff.

The *Durling* case is procedurally advanced and has involved months of extensive discovery, motion practice, and supervision by the court – which has taken great care to ensure that litigation resources in such a potentially sprawling case are efficiently deployed. To that end, the court in *Durling* has crafted and enforced a detailed case management schedule.

Now, however, on the eve of resolution of plaintiffs' renewed motion for conditional certification of the nationwide collective action in *Durling* (*infra*, § II.B), following months of extensive discovery and motion practice, Plaintiff Thomas has filed the instant case, which raises substantially the same allegations, on behalf of an overlapping collective action, as those at issue in *Durling* – namely, that delivery drivers were improperly reimbursed and that PJI is liable under a joint-employer theory.[6]

This Court should apply the well-established first-to-file rule and dismiss this case in favor of the *Durling* action, or transfer this case to the Southern District of New York where Judge Cathy Seibel has efficiently managed the litigation for more than 15 months, so that it can be consolidated with *Durling*. Alternatively, this Court should, at a minimum, stay the case pending resolution of *Durling*. Allowing this case to proceed separately from *Durling* would waste significant judicial resources and create a substantial risk of inconsistent rulings – especially in light of the current procedural posture of the *Durling* case.

---

[6] Weeks after filing this case, counsel for Plaintiffs filed another case against PJI and a different franchisee in federal district court in Idaho asserting essentially the same claims and theories of recovery. *Edwards v. PJ Ops Idaho, LLC, et al.,* No 1:17-CV-00283-DCN (Dist. Idaho). After counsel for PJI notified counsel for Plaintiffs of the *Durling* litigation and the applicability of the first-to-file rule, Plaintiffs' counsel agreed to drop the claims against PJI in the *Edwards* case. (*Edwards* ECF No. 24, Stipulation of Dismissal). Plaintiff's counsel, however, refused to drop their claims against PJI in this case.

3

## II.  BACKGROUND

### A.  Brief Procedural History Of *Durling*

On May 13, 2016, plaintiffs William Durling, Chris Bellaspica, Tom Wolff, Michael
Morris, and Richard Sobol filed a complaint against PJI in the U. S. District Court for the
Southern District of New York.  Only a single named plaintiff, Richard Sobol, was actually
employed as a delivery driver by PJI.[7]  The remaining named plaintiffs in *Durling*, like Plaintiff
Thomas in this action and the vast majority of employees that plaintiffs in both *Durling* and this
action seek to represent in their purported collective actions, worked at stores that were
independently owned and operated by franchisees of PJI.

Plaintiffs in *Durling* allege that they are seeking to "redress Defendant's systematic
policy and practice of paying its delivery drivers hourly wages that are well below the minimum
wage" in violation of the FLSA and the minimum wage laws of New York, Pennsylvania, New
Jersey, and Delaware.  (Maatman Decl. Ex. 2, *Durling* Amended Class/Collective Action
Complaint ¶ 1.)  The *Durling* plaintiffs bring their FLSA claim on behalf of "all delivery drivers
Defendant employed during the maximum limitations period."  (*Id.* ¶ 5.)  In addition, four of the
five named Plaintiffs purport to bring Rule 23 class actions under respective state minimum
wage laws on behalf of all persons employed at a Papa John's store as a delivery driver in their
respective states.  (*Id.* ¶¶ 6-9.)

Plaintiffs' complaint in *Durling* claims that the standards and requirements that PJI uses
to maintain the consistency and quality of its brand nationwide for both corporate and franchise
stores renders it a joint employer.  Specifically, plaintiffs allege that PJI's "policies and
practices . . . cause drivers at both corporate and franchise stores to be uniformly under-

---

[7] Plaintiff Thomas has also never been employed by PJI, but rather worked at a Papa John's store located in
Cincinnati, Ohio which is *not* a PJI corporate owned store.  (ECF No. 1 ¶ 112.)

reimbursed" (*id.* ¶ 3), including its "standardized procedures for hiring delivery drivers" (*id.* ¶ 23); "standard policies, systems, procedures and requirements" for delivery drivers "promulgated" by PJI (*id.* ¶ 25); and "the policy by which delivery drivers are under-reimbursed." (*Id.* ¶ 26.)  Plaintiffs further allege that PJI "supervises, controls, manages and/or assists all individuals and business entities . . . both corporate and franchise." (*Id.* ¶ 22.)

According to the *Durling* plaintiffs, PJI "reap[s] profits from Papa John's stores by under-reimbursing delivery drivers, while, at the same time, attempting to shield itself from liability from wage and hour lawsuits brought by those drivers" through a "policy and practice of selling certain of its stores to local owners as a franchise."  (*Id.* ¶ 19.)  In doing so, plaintiffs allege that PJI received "fees and royalties that are directly tied to the profits its franchises make, so the less its franchisees pay to their delivery drivers, the more money [PJI] makes." (*Id.* ¶ 20.)

### B. Plaintiffs In *Durling* Are Pursuing A Nationwide FLSA Collective Action, Alleging That Delivery Drivers Were Under-Reimbursed

On October 14, 2016, plaintiffs in *Durling* sought conditional certification, pursuant to 29 U.S.C. § 216(b), of an FLSA collective consisting of all delivery drivers who work, or have worked, at both corporate and franchisee Papa John's stores.  *Durling*, No. 7:16 Civ. 3592 (S.D.N.Y.) (ECF Nos. 66, 67.)  On March 29, 2017, the court denied plaintiffs' motion for conditional certification without prejudice.  (*See* Maatman Decl. ¶ 5, Ex. 1, Transcript of Proceedings, March 29, 2017 at 24:12-15.)  In denying plaintiffs' motion for conditional certification, the court held: "my role at this stage is simply to determine whether the plaintiffs have sufficiently alleged that they and the other employees in the potential collective were victims of a common compensation policy that violated the FLSA."  (*Id.* at 23:13-16.)  The court also reiterated several times that the relevant inquiry on conditional certification is whether the Plaintiffs identified a common policy that violates the FLSA.  (*Id.* at 25:7-12 ("the relevant

5

practice that binds FLSA plaintiffs together must be the one that is alleged to have violated the

statute itself"); 27:7-13; 31:7-12 (concluding that for plaintiffs to show that employees of PJI and

its franchisees are similarly situated they must show "they together were the victims of a

common policy or plan that **violated the law**.") (emphasis added).)

Ultimately, the court held that "plaintiffs have offered no evidence that [PJI] dictated the

payment policy for delivery drivers at all Papa John's restaurants, including franchises" (*id.* at

24:12-15) and denied plaintiffs' motion for conditional certification, without prejudice:

> Recognizing the plaintiffs only have to make a modest factual showing that those
> employed nationwide as delivery drivers by defendant and defendant's
> franchisees are similarly-situated and that its plausible that they together were
> victims of a common policy or plan that violated the law, I find that plaintiffs
> have not met that burden.  Accordingly, the motion for conditional collective
> action certification is denied, although without prejudice to renewal.

(*Id.* at 31:7-14.)

On April 30, 2017, plaintiffs filed a renewed motion for conditional certification, which

PJI has opposed.  *Durling*, No. 7:16 Civ. 03592 (S.D.N.Y.) (ECF Nos. 160, 161, 208.)

Plaintiffs' renewed motion for conditional certification is fully briefed, and awaiting decision by

the court.

To date, the parties in *Durling* have conducted significant discovery, including the

depositions of 9 individuals, and PJI alone has produced approximately 200,000 pages of

documents.  (Maatman Decl. ¶ 7.)

### C. Approximately 15 Months After The Commencement Of *Durling*, Plaintiff Thomas Files This Overlapping Case

Approximately 15 months after *Durling* was filed, Plaintiff Thomas filed this case

asserting nearly identical claims on behalf of an overlapping collective action of delivery drivers.

In this case, Plaintiff Thomas purports to bring an FLSA claim for "Failure to Pay

Minimum Wages."  (ECF No. 1, Count 1).  Plaintiff alleges that PJI "required Plaintiffs and the

6

FLSA Collective to pay for automobile expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses."  Plaintiff claims that this, and other practices, caused him and the FLSA Collective to be paid less than the mandated minimum wage for all hours worked (ECF No. 1 ¶¶ 239-244).  Plaintiff also alleges claims for failure to pay Plaintiff and other delivery drivers minimum wage, untimely payment of wages, recordkeeping violations and for exemplary and punitive damages under Ohio law.  (*Id.* ¶¶ 246-268.)

> Plaintiff asserts:
>
> Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Cincinnati Regional Stores owned, operated and controlled by Defendants nationwide . . . .

(*Id.* ¶ 209).

> Plaintiff claims:
>
> At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, failing to reimburse delivery drivers for automobile expenses and other job-related expenses, and for Defendants' clock in/out policies.  Plaintiffs' claims are essentially the same as those of the FLSA Collective.

(*Id.* ¶ 210.)

> Plaintiff also purports to bring his Ohio state law claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and a class of persons consisting of:
>
> All persons who work or worked as Delivery Drivers and similar employees for Papa John's International, Inc., It's Only Downtown Pizza, Inc.; It's Only Pizza, Inc.; It's Only Downtown Pizza II Inc.; It's Only Papa's Pizza LLC; and/or Michael Hutmiera t the Cincinnati Regional Stores in Ohio between June 16, 2014 and the date of final judgment in this matter ("Rule 23 Class").

(*Id.* ¶ 220.)

As in *Durling*, Plaintiff also makes extensive allegations that PJI is liable as a joint-employer (*id.* ¶¶ 104-183) because PJI, *inter alia*, "exercises substantial control over Plaintiff and similarly situated delivery drivers, both directly and indirectly" (*id.* ¶ 130), "has the power to curtail the unlawful policies, patterns and/or practices alleged herein, but has refrained from doing so in order to continue to reap the profits from the franchise relationship" (*id.* ¶ 131), "provides franchisees with operating manuals that contain the mandatory and suggested specifications, standards and operating procedures prescribed by PJI" (*id.* ¶ 148), periodically inspects franchisees to ensure compliance with all required standards, specifications and procedures of the System, the franchise agreement, and the Manuals," (*id.* ¶ 154) and "[t]he control PJI has exerted over its franchisees exceeds any control necessary to protect Papa John's trademark or good will."  (*Id.* ¶ 203.)

## ARGUMENT

## III.  THIS CASE SHOULD BE DISMISSED, TRANSFERRED, OR STAYED UNDER THE FIRST-TO-FILE RULE

This case should be dismissed, transferred, or stayed under the "first-to-file" rule because it purports to bring an identical FLSA claim, based on the same theory (that delivery drivers were improperly reimbursed), with nearly identical joint-employer allegations directed against PJI, and seeks relief for members of an overlapping collective action sought in *Durling*.

### A.  The First-To-File Rule

In the Sixth Circuit, the first-to-file rule mandates that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment."  *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (internal quotation omitted).  This

presumption is so strong that, "in the absence of compelling circumstances, the federal court first seized of jurisdiction over a dispute should be permitted to adjudicate the controversy to its full extent." *Abbott Labs., Inc. v. Mead Johnson & Co.*, No. 98-CV-0157, 1998 WL 416758, at *2 (S.D. Ohio Apr. 21, 1998). The purpose of the first-to-file rule is to "encourage[] comity among federal courts of equal rank," *Zide Sport Shop*, 16 F. App'x at 437, "promote judicial efficiency," *Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999), and "avoid duplicative litigation," *Graessle v. Nationwide Credit Inc.*, No. 06-CV-00483, 2007 WL 894837, at *3 (S.D. Ohio Mar. 22, 2007). Accordingly, courts may only decline to enforce the first-to-file rule "where equity so demands," such as when the record contains evidence of forum shopping, bad faith, or inequitable conduct. *Zide Sport Shop*, 16 F. App'x at 437.

In the Sixth Circuit, district courts apply the first-to-file rule look to three factors, including: (1) the chronology of the actions (*i.e.*, which action was filed first); (2) the parties involved; and (3) the similarity of the issues in each case. *Watson v. Jimmy John's LLC*, No. 2:15-CV-768, 2015 WL 4132553, at *2 (S.D. Ohio July 7, 2015) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007); *Greene v. Ab Coaster Holdings, Inc.*, Nos. 2:10-CV-38 & 2:10-CV-234, 2010 WL 3119399, at *3 (S.D. Ohio Aug. 6, 2010).) However, in order for the first-to-file rule to apply, "[t]he parties and claims in the two actions need not be identical." *SPEC Int'l, Inc. v. Patent Rights Protection Group, LLC*, No. 08-CV-662, 2009 WL 736826, at *3 (W.D. Mich. Jan. 9, 2009). Rather, "there need be only substantial overlap for the actions to be duplicative and thus to implicate the first-to-file rule." *Id.* (internal quotation omitted).

After finding that the first-to-file rule applies to a second-filed case, courts have discretion to dismiss the case, transfer the case to the first-filed forum, or stay the case pending

9

the outcome of the first-filed litigation. *See, e.g., Carter v. Bank One*, 179 F. App'x 338, 340

(6th Cir. 2006) (holding that "a district court properly may dismiss a case because of a

previously filed case pending before another district court that presents the same issues and

involves the same parties" and affirming district court's dismissal on this ground); *AluChem, Inc.

v. Sherwin Alumina L.P.*, No. 06-CV-263, 2006 WL 1281887, at *1-2 (S.D. Ohio May 10, 2006)

(holding that "first-to-file rule is a well-established doctrine that encourages comity among

federal courts of equal rank" under which "[c]ourt may dismiss this case, stay the case pending

the outcome of the first-filed suit, or transfer the case") (internal citation omitted); *Graessle*,

2007 WL 894837, at *5 (dismissing action pursuant to first-to-file rule because case involved

"substantially the same parties and issues already pending" in first-filed case).[8]  The first-to-file

rule is particularly appropriate in the context of later-filed FLSA collective actions, which

threaten to present overlapping classes, multiple attempts at certification in different courts, and

complicated settlement negotiations.[9]

---

[8] Indeed, district courts in the Sixth Circuit routinely exercise their discretion under the first-to-file rule to either dismiss, transfer, or stay the second-filed case. *See Overdrive, Inc. v. Foreword Magazine, Inc.*, No. 10-CV-2814, 2011 WL 1870034, at *4 (N.D. Ohio May 12, 2011) (granting motion to dismiss pursuant to first-filed rule); *Long v. CVS Caremark Corp.*, No. 09-CV-1392, 2010 WL 547143, at *5 (N.D. Ohio Feb. 11, 2010) (same); *Nartron Corp. v. Quantum Research Grp., Ltd.*, 473 F. Supp. 2d 790, 796 (E.D. Mich. 2007) (holding that for the sake of comity and efficiency, "first-filed rule dictates that this Court dismiss the later-filed case"); *BSI Indus., Inc. v. Q.B. Johnson Mfg., Inc.*, No. 08-CV-276, 2009 WL 349143, at *3 (S.D. Ohio Feb. 6, 2009) (transferring second-filed case under first-to-file doctrine); *City of Columbus v. Hotels.com, L.P.*, No. 06-CV-677, 2007 WL 2029036, at *5 (S.D. Ohio July 10, 2007) (granting motion to transfer under first to file rule); *Fryda v. Takeda Pharm. N. Am., Inc.*, No. 11-CV-00339, 2011 WL 1434997, at *6 (N.D. Ohio Apr. 14, 2011) (granting motion to transfer wage and hour case to the Northern District of Illinois and holding that the "opportunity to consolidate litigation involving similar parties and issues" played a critical role in the decision); *Fuller v. Abercrombie & Fitch Stores, Inc.,* 370 F. Supp. 2d 686, 691 (E.D. Tenn. 2005); *see also Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio*, Inc., 83 F. Supp. 2d 1197, 1199 (D. Kan. 1999) (staying proceedings in second-filed action until "final termination of the proceedings pending in the [first-filed forum]"); *Valbruna Stainless, Inc. v. Consol. Pipe & Supply Co., Inc.*, No. 09-CV-351, 2010 WL 909077, at *5 (N.D. Ind. Mar. 9, 2010) (applying first-filed rule to stay second-filed action).

[9] Federal courts consistently apply the first-to-file rule to overlapping wage and hour collective actions. *See, e.g., Fuller*, 370 F. Supp. 2d at 690-91 (transferring second-filed FLSA because first-filed action sought certification of an identical collective action); *Steavens v. Elec. Data Sys. Corp.*, No. 07-CV-14536, 2008 WL 5062847, at *3 (E.D. Mich. Nov. 25, 2008) (same); *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 342-43 (S.D. Miss. 2008) (same); *Goldsby v. Ash*, No. 09-CV-975, 2010 WL 1658703, at *4 (M.D. Ala. Apr. 22, 2010) (applying first-to-file rule in FLSA wage and hour case despite difference in parties); *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010) (applying first-to-file rule where later filed case was "truly duplicative" of earlier-filed FLSA claim,

As discussed below, all three factors are met here, for the *Durling* case was filed over 15 months before this case; both cases involve a common defendant – PJI – and nearly identical proposed nationwide collective actions; and both cases purport to bring FLSA claims based on the same theory (that delivery drivers were improperly reimbursed), with nearly identical joint-employer allegations directed towards PJI.

In addition, because no equitable exceptions to the first-to-file rule are applicable, the Court should dismiss, transfer, or stay this case. For these reasons, PJI respectfully requests this Court to grant its motion.

        **1.**       **The First-To-File Rule Applies Because The Parties And Issues In This Case And *Durling* Substantially Overlap**

There is no reasonable dispute that the parties and issues in this action substantially overlap with the parties and issues in *Durling*. First, the parties in the two cases are substantially identical and both cases involve PJI as a defendant. Moreover, Plaintiff Thomas could be an Opt-In Plaintiff in *Durling* based on the purported collective action definition in *Durling*. As noted above, the parties in both actions need not be identical in order for the first-to-file rule to apply. *See Goldsby*, 2010 WL 1658703, at *4 (finding defendants in two cases were substantially similar even though no defendants were named in both lawsuits because both suits were based on the same alleged FLSA violations); *Portman v. Wilson*, No. 10-CV-169, 2010 WL 2870050, at *3 (E.D. Ky. July 19, 2010) (finding defendants in two cases were the same where plaintiff "asserted all of the foregoing claims (and additional claims) against the same defendants named in this action (and additional defendants)" in a prior complaint).

---

noting that "this Court should not battle with the [earlier-filed] court over the same case"); *In Re Enterprise Rent-A-Car Wage & Hour*, 626 F. Supp. 2d 1325, 1326 (U.S. Jud. Pan. Mult. Lit. 2009) (applying first-to-file rule to transfer FLSA MDL to first-filed forum).

Second, the primary issues in both actions are the same. Plaintiffs in both cases bring an FLSA claim pursuant to the same theory – that PJI failed to adequately reimburse delivery drivers for expenses thereby paying delivery drivers below the minimum wage. (*Cf.* ECF No. 1 ¶ 6; Maatman Decl. Ex. 2 ¶ 2.) Both cases allege that PJI maintains a policy and practice of failing to reimburse delivery drivers for costs and expenses which causes delivery drivers at both corporate and franchisee stores to be under-reimbursed. (*Cf.* ECF No. 1 ¶ 7; Maatman Decl. Ex. 2 ¶ 3.) Both cases allege an identical FLSA claim seeking unpaid wages and unreimbursed expenses as a result of PJI's alleged minimum wage violations. (*Cf.* ECF No. 1 ¶¶ 237-245; Maatman Decl. Ex. 2 ¶¶ 75-86.) In other words, in both actions, plaintiffs have *pled* the same claim and the same theory of relief, and the ultimate issue in both cases – whether delivery drivers were adequately reimbursed and paid minimum wage – will be litigated and decided in both cases. Both cases also allege that PJI is liable for the alleged minimum wage violations as a joint-employer. (*Cf.* ECF No. 1 ¶¶ 129-208; Maatman Decl. Ex. 2 ¶¶ 19-40.)

While PJI categorically denies that these issues can be decided uniformly for any of the plaintiffs in either action because the plaintiffs worked at different franchise locations, for different employers, under different working conditions and circumstances – much less for a nationwide collective of all delivery drivers – the fact remains that Plaintiffs have pled the same theory of relief for an overlapping collective action. At a minimum, the central issues concerning Plaintiffs' novel attack on the franchisor/franchise relationship, as well as the feasibility and appropriateness of collective action certification of such sprawling actions, will involve overlapping issues common to both actions. PJI should not be forced to litigate these identical, crucial issues in two different federal district courts.

12

2.      **The First-To-File Rule Applies Because The Collective Definitions In** *Durling* **And This Case Substantially Overlap**

Notably, Plaintiff seeks to represent members of a proposed collective action of delivery drivers which is wholly subsumed by the collective action definition in *Durling*.  While the named plaintiffs differ, "[t]he first-to-file rule requires the court in a class action suit to compare the proposed classes, not their representatives."  *See Watson,* 2015 WL 4132553, at *3 ("although the named plaintiffs in each case differ, the first-to-file rule in a class action suit only requires that the Court compare the proposed classes, not the named plaintiffs."); *see also Siegfried v. Takeda Pharm. North America, Inc.,* No. 10-CV-02713, 2011 WL 1430333, at *5 (N.D. Ohio Apr. 14, 2011) (though second-filed FLSA action had different named plaintiffs, parties were similar, warranting transfer under first-filed rule because plaintiff in second action sought to represent a class that was encompassed by the class in the first-filed action); *Steavens*, 2008 WL 5062847, at *2 (same).  Here, it is evident that the proposed collective action in this case is wholly encompassed by the proposed collective action in *Durling* and therefore, application of the first-to-file rule is appropriate.[10]

---

[10] *See Ortiz v. Panera Bread Co.*, No. 10-CV-1424, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011) ("The first-to-file rule is particularly appropriate in the context of competing FLSA collective actions, which threaten to present overlapping classes . . . ."); *see also Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) (dismissing class and collective action claims under the FLSA and state wage laws because proposed class of allegedly misclassified employees was identical to first-filed action); *Fuller*, 370 F. Supp. at 689-90 (transferring second-filed FLSA case because first-filed action sought certification of an identical collective action).

13

| Purported Collective Class Definition Comparison | |
|---|---|
| *Durling* | *Thomas* |
| "All persons Defendant employed (either directly or through its franchisees) as a delivery driver during any workweek in the maximum limitations period." (Maatman Decl. Ex. 2 ¶ 62) | "Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Cincinnati Regional Stores owned, operated and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective") (ECF No. 1 ¶ 209) |

Moreover, the fact that Plaintiff here also has brought an FLSA overtime claim and claims pursuant to Ohio law does not make proceeding in the first-filed forum any less appropriate. Courts have consistently held that allowing a plaintiff to avoid the consequences of the first-to-file rule simply because one of the cases has additional claims would defeat the very purpose of the first-to-file rule in promoting judicial efficiency and avoiding the possibility of competing judgments. *See, e.g.*, *Watson*, 2015 WL 4132553, at *3 (applying the first-to-file rule "[d]espite the claims that differ between the two suits" where "the core claim is the same – an unpaid overtime FLSA action brought individually by plaintiffs on behalf of a nationwide class."); *IMG Worldwide, Inc. v. Matthew Baldwin*, No. 10-CV-794, 2010 WL 3211686, at *4 (N.D. Ohio Aug. 11, 2010) (applying first-to-file rule even where second-filed case includes additional claims for spoliation of evidence, breach of contract, and violation of trade secrets since both disputes "stem from the same underlying set of facts" and "the issues involved in both cases substantially overlap"); *Siegfried*, 2011 WL 1430333, at *6 (applying first-to-file rule to transfer case to court with first-filed case that included additional claims, noting "these additional claims and requests for relief fail to defeat the substantial overlap between the issues involved in both cases"); *Mitsubishi Caterpillar Forklift Am. v. Minnesota Supply Co.*, No. 10-CV-2696, 2011 WL 711564, at *4 (N.D. Ohio Feb. 22, 2011) ("conclud[ing] that the issues involved in

14

both cases substantially overlap and that the distinctions between the cases with respect to the claims asserted are not sufficient to remove this case from the 'first-to-file' framework").[11]

The U.S. District Court for the Southern District of Ohio's recent decision in *Watson v. Jimmy John's LLC*, No. 2:15-CV-768, 2015 WL 4132553 (S.D. Ohio July 7, 2015) – transferring a later-filed and overlapping FLSA collective action alleging wage and hour violations against Jimmy John's pursuant to a joint-employer theory to the Northern District of Illinois based on the first-to-file rule – is particularly instructive here and directly on point. In *Watson*, the court noted that the parties were substantially similar and that "although the named plaintiffs in each case differ, the first-to file rule in a class action suit only requires that the Court compare the proposed classes, not the named plaintiffs and "[t]he class that Plaintiffs seek to represent is substantially similar to the class in the first-filed case." *Id*. at *3. Further, like here, the court held that despite the fact that the claims differed between the two suits, "the core claim is the same – an unpaid overtime FLSA action brought individually by plaintiffs and on behalf of a nationwide class" and that "the core issue in determining Defendant's liability for all claims in both cases will be whether Defendants are joint employers." *Id*.

---

[11] Numerous other district courts have likewise applied the first-to-file rule in cases in which claims partially overlap. *See, e.g., Koehler v. Pepperidge Farm, Inc.,* No. 13-CV-2644, 2013 WL 4806895, *5-6 (N.D. Cal. Sept. 9, 2013) (applying first-filed rule to transfer case with only statutory claims to court with first-filed case with additional common law claims because it would "serve the purpose of the first-to-file rule in promoting judicial efficiency and avoiding the possibility of conflicting judgments"); *Troche v. Bimbo Foods Bakeries Distrib., Inc.*, No. 11-CV-234, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011) (noting that the "the presence of additional but related state law claims does not mean that the cases are so dissimilar as to avoid the application of the first-filed rule" and transferring FLSA action to the first-filed venue); *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010) ("It serves no valid judicial interest to maintain two substantially identical claims by two plaintiff classes in separate courts, merely because some additional claims have been added to the second-filed case."); *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011) ("Indeed, in a class action situation such as this, it would be impossible for the claims to overlap exactly where the actions are brought in different states, and the purpose of the rule would be defeated. There would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law.").

15

The precise rationale applied by the court in *Watson* directly supports application of the first-to-file rule here where the core claims, issues, and joint-employer theory of liability are common to both actions.  Accordingly, application of the first-to-file rule is appropriate.

### 3. Allowing Plaintiff To Proceed In This Forum Would Waste Significant Judicial Resources And Create A Substantial Risk Of Inconsistent Rulings

Having two federal courts decide the same ultimate issues in both cases – whether delivery drivers were properly reimbursed and whether PJI is a joint-employer for purposes of FLSA liability – on behalf of overlapping collective action members would be a waste of judicial resources, and create the possibility of conflicting judgments.  Application of the first-to-file rule avoids these risks.[12]

Allowing this case to proceed would create a substantial risk of inconsistent rulings. The *Durling* court's recent denial of plaintiffs' motion for conditional certification and forthcoming decision on plaintiffs' renewed motion for conditional certification only serves to highlight the potential risk of inconsistent rulings.

### 4. No Exceptions To The First-To-File Rule Apply Here

Courts may decline to enforce the first-to-file rule, however, "where equity so demands." *Zide Sport Shop*, 16 F. App'x at 437.  The typical circumstances under which an exception to the

---

[12] *See Sandusky Wellness Ctr., LLC v. DrFirst.com, Inc.*, No. 12-CV-2261, 2012 WL 6732636, at *3 (N.D. Ohio Dec. 28, 2012) ("almost identical putative class action[s]" were sufficiently similar to meet first-filed rule, even though first case contained additional claims); *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 12-CV-00501, 2012 WL 4363723, at *4 (W.D. Mo. Sept. 21, 2012) (first-filed rule applied to second-filed action that had more claims than the first-filed action); *Schwartz v. Frito-Lay North America*, No. 12-CV-02740, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012) (same); *IMG Worldwide, Inc. v. Matthew Baldwin*, No. 10-CV-794, 2010 WL 3211686, at *4-5 (N.D. Ohio Aug. 11, 2010) (issues in two cases overlapped because additional claims in second action involved the same set of underlying facts); *Cavaliers Operating Co., LLC v. Ticketmaster*, No. 07-CV-2317, 2007 WL 3171584, at *3 (N.D. Ohio Oct. 30, 2007) (holding that "minor distinctions between the two cases with respect to parties and issues" does not defeat application of the first-to-file rule); *Abbott Labs. Inc. v. Mead Johnson & Co.*, No. 98-CV-0157, 1998 WL 416758, at *4 (S.D. Ohio Apr. 21, 1998) (additional claim not raised in first action did not preclude transfer because "the two cases involve closely related questions on a common subject matter and . . . the core issues overlap completely").

16

first-to-file rule applies include when the record contains evidence of forum shopping, bad faith, or inequitable conduct. *Id.* No such circumstances exist here. In fact, equitable considerations actually weigh *in favor* of application of the first-to-file rule where *Durling* was filed over 15 months ago and is at an advanced procedural stage.

## CONCLUSION

For the reasons set forth above, PJI requests that the Court grant PJI's motion and dismiss, transfer, or stay this action under the first-to-file rule.

**DATED: September 5, 2017**

Respectfully submitted,

PAPA JOHN'S INTERNATIONAL, INC.

By:/s/ Gerald L. Maatman, Jr.
        *One of The Attorneys for Defendant*
        *Papa John's International, Inc.*

Christina M. Janice
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5224
Facsimile: (312) 460-7279
cjanice@seyfarth.com

Gerald L. Maatman, Jr. (admitted *pro hac vice*)
Gina R. Merrill (*pro hac vice* to be applied for)
Brendan Sweeney (*pro hac vice* to be applied for)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
gmaatman@seyfarth.com
gmerrill@seyfarth.com
bsweeney@seyfarth.com

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September, 2017, I electronically filed the

foregoing Papa John's International, Inc.'s Motion to Dismiss, Transfer the Case to the Southern

District of New York, or Stay the Case and Memorandum of Law in Support of Motion with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record, including the following:

> Andrew Biller
> Andrew P Kimble
> Markovits, Stock & DeMarco, LLC
> 4200 Regent Street, Suite 200
> Columbus, OH 43219
> Telephone: 614-604-8759
> Fax: 614-583-8107
> Email: abiller@msdlegal.com
> Email: akimble@msdlegal.com
>
> Brian Patrick O'Connor
> Santen & Hughes
> 600 Vine St.
> Ste. 2700
> Cincinnati, OH 452052
> 513-721-4450
> Fax: 513-721-0109
> Email: bpo@santen-hughes.com

/s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.

40740712v.1